1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

SEATTLEHAUNTS, LLC,

CASE NO. C19-1937JLR

11

Plaintiff,

ORDER ON MOTIONS TO
DISMISS AND TO STRIKE

12

v.

13

THOMAS FAMILY FARM, LLC, et
al.,

14

Defendants.

15

## I.   INTRODUCTION

16

17

Before the court are (1) Plaintiff Seattlehaunts, LLC ("Seattlehaunts") motion to

dismiss several of Defendant Thomas Family Farm, LLC's ("Thomas Family" or

18

19

"Thomas Family Farm") counterclaims and strike Thomas Family's affirmative defenses

(Seattlehaunts Mot. (Dkt. # 22)); and (2) Third-Party Defendant Joseph Wondell's

20

21

motion to dismiss several of Thomas Family's claims against him (Wondell Mot. (Dkt.

22

//

# 23)).[1]  Thomas Family opposes both motions.  (Resp. to Seattlehaunts Mot. (Dkt. # 24); Resp. to Wondell Mot. (Dkt. # 26).)  The court has considered the motions, the parties' submissions in support of and in opposition to the motions, the relevant portions of the record, and the applicable law.  Being fully advised,[2] the court GRANTS in part and DENIES in part Seattlehaunts' motion and GRANTS Mr. Wondell's motion.

## II.    BACKGROUND

### A.    Factual Background

This is an intellectual property dispute.[3]  Thomas Family owns and runs a commercial amusement park on farm property located on Highway 9 in Snohomish,

---

[1] The parties repeatedly refer to Thomas Family's claims against Mr. Wondell as "counterclaims."  (*See, e.g.*, Wondell Mot. at 1; Resp. to Wondell Mot. at 1.)  However, because Mr. Wondell is not a plaintiff, but rather a third-party defendant, Thomas Family's claims against him are properly referred to as third-party claims.  (*See* Dkt.; *see also* Fed. R. Civ. P. 13, 14.)

[2] Seattlehaunts and Mr. Wondell do not request oral argument (Seattlehaunts Mot. at 1; Wondell Mot. at 1), but Thomas Family requests oral argument on both motions (Resp. to Seattlehaunts Mot. at 1; Resp. to Wondell Mot. at 1.)  Oral argument is not necessary where the non-moving party suffers no prejudice.  *See Houston v. Bryan*, 725 F.2d 516, 517-18 (9th Cir. 1984); *Mahon v. Credit Bureau of Placer Cty. Inc.*, 171 F.3d 1197, 1200 (9th Cir. 1999) (holding that no oral argument was warranted where "[b]oth parties provided the district court with complete memoranda of the law and evidence in support of their respective positions," and "[t]he only prejudice [the defendants] contend they suffered was the district court's adverse ruling on the motion.").  "When a party has an adequate opportunity to provide the trial court with evidence and a memorandum of law, there is no prejudice [in refusing to grant oral argument]." *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998) (quoting *Lake at Las Vegas Investors Grp., Inc. v. Pac. Malibu Dev. Corp.*, 933 F.2d 724, 729 (9th Cir. 1991)) (alterations in *Partridge*).  Here, the issues have been thoroughly briefed by the parties, and oral argument would not be of assistance to the court.  *See* Local Rules W.D. Wash. LCR 7(b)(4).  Accordingly, the court DENIES Thomas Family's requests for oral argument.

[3] The court set forth Seattlehaunts' relevant alleged facts in adjudicating Thomas Family Farm's prior motion to dismiss.  (*See* 4/6/20 Order (Dkt. # 18) at 2-6.)  On the present motions, because Thomas Family is the nonmoving party, the court accepts Thomas Family's well-pleaded factual allegations as true and draws all reasonable inferences in favor of Thomas

Washington ("the Farm").  (Countercl. (Dkt. # 19) ¶¶ 8-9.)[4]  In April 2011, Thomas

Family began to develop a commercial haunted house attraction on the Farm and created

the name "Nightmare on 9" for the event.  (*Id.* ¶¶ 10-11.)  Thomas Family created the

following graphic for "Nightmare on 9":



(*Id.* ¶ 12 ("Hook Graphic").)  In 2012, Thomas Family and Seattlehaunts entered into an

agreement to jointly put on the Nightmare on 9 event ("the Event" or "Nightmare on 9").

(*Id.* ¶ 15.)

Thomas Family alleges that it hired and paid a commercial designer, Mr. Wondell

"to improve" the Hook Graphic created by Thomas Family.  (*Id.* ¶ 16.)  According to

Thomas Family, Mr. Wondell created the following graphic:

//

//

---

Family.  Accordingly, the court relies on the alleged facts in Thomas Family's counterclaim (*see generally* Countercl.) in setting forth the background in this order.

[4] The court cites to the portion of Thomas Family's answer and counterclaim that contains its counterclaims as "Countercl.," and the portion that contains its answer as "Ans."



(*Id.* ¶ 17 ("Original Wondell Graphic").)

In 2013, Thomas Family hired Seattlehaunts annually as an independent contractor to present, set up, and run the Nightmare on 9 event at the Farm.  (*Id.* ¶ 19; *see also* Jacobowitz Decl. (Dkt. # 9) ¶ 2, Ex. 1 ("State Court Compl.") ¶ 16, Ex. H ("Contract").) The parties' contract for 2014 refers to "apparel . . . with Thomas Family Farm's trademarked 'Nightmare on 9' on them."  (Countercl. ¶ 20.)  The same contract states that Thomas Family and Seattlehaunts would "[a]t this time . . . share the copyright and trademark to 'Nightmare on 9.'"  (*Id.* ¶ 21.)  Seattlehaunts operated a "Nightmare on 9 Haunted House" Facebook page.  (*Id.* ¶ 22.)  On one occasion, Seattlehaunts posted on the Facebook page that the Nightmare 9 event is "also known as Thomas Family Farm." (*Id.* ¶ 25.)

In 2018, Thomas Family registered the name "Nightmare on 9" with the Hook Graphic in classifications 16 and 31 as a trademark with the Washington Secretary of

State's office.  (*Id.* ¶ 28.)  In 2019, Seattlehaunts asked for a greater share of the revenue from the Nightmare on 9 event.  (*Id.* ¶ 30.)  Subsequently, Thomas family decided not to work with Seattlehaunts on the Nightmare on 9 event.  (*Id.* ¶ 31.)  Also in 2019, Thomas Family discovered that Seattlehaunts was advertising through Facebook and its website that the Nightmare on 9 event would not be taking place in 2019 and was no longer associated with Thomas Family or the Farm.  (*Id.* ¶ 32; Countercl. Ex. A.)  Seattlehaunts advertised the Nightmare on 9 event using a revised version of the Original Wondell Graphic ("Revised Wondell Graphic").  (*Id.* ¶ 34.)  According to Thomas Family, Seattlehaunts profited from the Nightmare on 9 event after advertising it using the Revised Wondell Graphic.  (*Id.* ¶ 35.)  On August 13, 2019, Thomas Family sent a cease and desist letter to Seattlehaunts including demands that Seattlehaunts rejected.  (*Id.* ¶¶ 36, 38; Countercl. Ex. B.)

Seattlehaunts subsequently attempted to register the Revised Wondell Graphic as a trademark.  (*Id.* ¶ 40.)  Seattlehaunts also contacted Mr. Wondell to obtain copyright rights in the Revised Wondell Graphic, which Mr. Wondell purported to assign to Seattlehaunts on August 15, 2019.  (*Id.* ¶¶ 41, 45.)  On August 16, 2019, Seattlehaunts registered a copyright to the Revised Wondell Graphic with the United States Patent and Copyright Office ("the Copyright Office").  (*Id.* ¶ 50.)  In its copyright application, Seattlehaunts listed Mr. Wondell as the sole author of the Revised Wondell Graphic.  (*Id.* ¶ 51.)  Seattlehaunts then demanded that Thomas Family rename or discontinue the Nightmare on 9 event (*id.* ¶ 56) and informed Thomas Family that it claimed copyright in the Revised Wondell Graphic (*id.* ¶ 57).  According to Thomas Family, that was the first

time Seattlehaunts had given Thomas Family notice that it claimed any intellectual property rights in the Revised Wondell Graphic. (*Id.* ¶ 59.) Seattlehaunts has also retained control of the Nightmare on 9 Haunted House Facebook page. (*Id.* ¶ 60.) On September 17, 2019, Seattlehaunts posted on the Facebook page that Thomas Family:

> decided to go ahead and do it on their own, saying that they're Nightmare on 9. That's misleading the public. Instead of informing the public that they're going to start their own haunted attraction they have taken our logo and our name.

(*Id.* ¶ 63, Countercl. Ex. C.)

**B.    Procedural Background**

On October 7, 2019, Thomas Family Farm filed a lawsuit against Seattlehaunts in Snohomish County Superior Court, *Thomas Family Farm, LLC v. Seattlehaunts, LLC*, Cause No. 19-2-09008-31 (the "State Court Action"). (*See* Am. Compl. ¶ 9; State Court Compl.) In that lawsuit, Thomas Family Farm brings claims for state trademark infringement and defamation against Seattlehaunts. (See FAC ¶ 9; State Court Compl. at 5-7.) Seattlehaunts filed this lawsuit against Thomas Family Farm on November 26, 2019 (*see* Compl. (Dkt. # 1) at 17) and amended the complaint on December 18, 2019 (*see* FAC at 21). Seattlehaunts brings claims for (1) unregistered trademark infringement and false designation or origin under the Lanham Act, 15 U.S.C § 1125; (2) Copyright Infringement under 17 U.S.C. § 101; (3) unfair competition under the Washington Consumer Protection Act, RCW ch. 19.86; (4) declaratory judgment of non-infringement; (5) declaratory judgment of abandonment; and (6) declaratory judgment of non-disparagement. (See FAC ¶¶ 50-79.)

Thomas Family moved to dismiss several of Seattlehaunts' claims.  (*See* TFF MTF (Dkt. # 8).)  The court denied that motion.  (4/6/20 Order (Dkt. # 18).)  Thomas Family Farm then filed an answer and counterclaim, alleging counterclaims against Seattlehaunts and third-party claims against Mr. Wondell.  (*See* Countercl. ¶¶ 69-157.) Thomas Family's answer also includes the following description of its affirmative defenses:

> 80. Invalid copyright.
> 81. Fraud on Copyright Office.
> 82. Innocent infringement.
> 83. Common source.
> 84. Unclean hands.
> 85. Lack of originality.
> 86. Abandonment of copyright.
> 87. Laches, waiver, and/or estoppel.
> 88. Statute of limitations.
> 89. Setoff and/or recoupment.
> 90. All matters asserted herein as counterclaims are raised as defenses.

(Ans. ¶¶ 80-90.)

Seattlehaunts and Mr. Wondell separately filed the present motions.  (*See* Seattlehaunts Mot.; Wondell Mot.)  Seattlehaunts' motion asks the court to (1) dismiss Thomas Family's claims for tortious interference and civil conspiracy as preempted by 17 U.S.C. § 301(a) of the Copyright Act of 1976 (the "Copyright Act");  (2) dismiss Thomas Family's claims for fraud, negligent misrepresentation, and breach of fiduciary duty under Federal Rule of Civil Procedure 12(b)(6); and (3) strike each of Thomas Family's affirmative defenses.  (Seattlehaunts Mot. at 5.)  Mr. Wondell's motion asks the court to dismiss three of Thomas Family's third-party claims against him.  (Wondell Mot. at 4.) The court now considers these motions.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

### III.   ANALYSIS

**A.   Legal Standards**

    1.   <u>Motions to Dismiss</u>

Rule 12(b)(6) provides for dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  When considering a motion to dismiss under Rule 12(b)(6), the court construes the complaint in the light most favorable to the nonmoving party.  *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005). The court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff.  *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).  The court, however, is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677-78. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id*. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

2. <u>Motions to Strike</u>

Federal Rule of Civil Procedure 8(c)(1) requires a party, in responding to a pleading, to "affirmatively state any avoidance or affirmative defense." Fed. R. Civ. P. 8(c)(1). A court may, on its own or on a motion, strike an affirmative defense under Federal Rule of Civil Procedure 12(f) if it is "insufficient" or presents "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). An affirmative defense may be insufficient as a matter of pleading or as a matter of law. *Cobra Sys., Inc. v. Unger*, No. 8:16-cv-00569-ODW-JEM, 2016 WL 9383517, at *1 (C.D. Cal. Aug. 4, 2016). An affirmative defense is insufficiently pleaded if it fails to provide the plaintiff "fair notice" of the defense asserted. *Wyshak v. City Nat'l Bank*, 607 F.2d 824, 827 (9th Cir. 1979), *abrogated in part on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc)).

In general, courts disfavor motions to strike, given the strong policy preference for resolving issues on the merits. *See, e.g., Chao Chen v. Geo Grp., Inc*., 297 F. Supp. 3d 1130, 1132 (W.D. Wash. 2018). Nonetheless, "where [a] motion [to strike] may have the effect of making the trial of the action less complicated, or have the effect of otherwise streamlining the ultimate resolution of the action, the motion to strike will be well taken." *California v. United States*, 512 F. Supp. 36, 38 (N.D. Cal. 1981). Indeed, the function of Rule 12(f) is "to avoid the expenditure of time and money that must arise from litigating spurious issues by disposing of those issues prior to trial. . . ." *Whittlestone, Inc. v. Handi-Craft Co*., 618 F.3d 970, 973 (9th Cir. 2010) (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994)).

1    Whether to grant a motion to strike lies within the discretion of the district court.  *Cal.*

2    *Dep't of Toxic Substances Control v. Alco Pac., Inc*., 217 F. Supp. 2d 1028, 1033 (C.D.

3    Cal. 2002)).  When considering a motion to strike, the court must view the pleadings in

4    the light most favorable to the pleading party.  *See, e.g., In re 2TheMart.com Secs. Litig*.,

5    114 F. Supp. 2d 955, 965 (C.D. Cal. 2000).

6    **B.    Seattlehaunts' Motion**

7         1.   <u>Preemption</u>

8         Seattlehaunts moves the court to dismiss Thomas Family's claims for tortious

9    interference and civil conspiracy as preempted by the Copyright Act.  (Seattlehaunts Mot.

10   at 10.)  Specifically, Seattlehaunts contends that Thomas Family's tortious interference

11   and civil conspiracy claims rely on the same factual allegations made in Thomas

12   Family's copyright infringement claim.  (*Id.*)

13        The Copyright Act expressly preempts state claims where (1) the plaintiff's work

14   "come[s] within the subject matter of copyright" and (2) the state law grants "legal or

15   equitable rights that are equivalent to any of the exclusive rights within the general scope

16   of copyright."  17 U.S.C. § 301(a).  Claims, however, "are not preempted if they fall

17   outside the scope of § 301(a)'s express preemption and are not otherwise in conflict with

18   the Act."  *Ryan v. Editions Ltd. West*., 786 F.3d 754, 760 (9th Cir. 2015).  With respect to

19   the second prong, "a state cause of action must assert rights that are qualitatively different

20   from the rights protected by copyright."  *Montz v. Pilgrim Films & Television, Inc.*, 649

21   F.3d 975, 980 (9th Cir. 2011).  "A state cause of action is 'qualitatively different' when it

22   //

contains an additional element not required for a copyright claim."  *Ryan*, 786 F.3d at 760.

### a. Tortious Interference

A tortious interference claim in Washington contains five elements:  "(1) the existence of a valid contractual relationship or business expectancy; (2) the defendant's knowledge of and intentional interference with that relationship or expectancy; (3) a breach or termination of that relationship or expectancy induced or caused by the interference; (4) an improper purpose or the use of improper means by the defendant that caused the interference; and (5) resultant damage."  *Tamosaitis v. Bechtel Nat'l, Inc.*, 327 P.3d 1309, 1313 (Wash. Ct. App. 2014) (quoting *Eugster v. City of Spokane*, 91 P.3d 117, 123 (Wash. Ct. App. 2004)).

Thomas Family's tortious interference counterclaim against Seattlehaunts is based on the allegations that "[Mr.] Wondell licensed the Logo to Thomas Family" and that Seattlehaunts "interfered with this license and with Thomas Family Farm's reasonable expectation that this license would continue, by impelling [Mr.] Wondell to terminate or purport to terminate the license."  (Countercl. ¶¶ 100-02.)  The asserted right in Thomas Family's tortious interference claim is the right to its contractual arrangement with Mr. Wondell, not its intellectual property rights in the Revised Wondell Graphic.  Thus, Thomas Family's asserted state law right is "qualitatively different than rights protected by copyright."  *See Montz*, 649 F.3d at 980-81 (holding that "copyright law does not preempt an implied contractual claim to compensation for use of a submitted idea" and noting that "[c]ontract claims generally survive preemption because they require proof of

an extra element.").  Although Thomas Family's tortious interference claim is distinct
from a breach of contract claim, it rests on Thomas Family's right against improper
interference with its contractual arrangement with Mr. Wondell.  Accordingly, the
Copyright Act does not preempt Thomas Family's tortious interference claim.

    b.  *Civil Conspiracy*

        Thomas Family alleges a state-law civil conspiracy claim against both
Seattlehaunts and Mr. Wondell.  (Countercl. ¶¶ 150-53.)  The factual basis for this claim
is that Mr. Wondell and Seattlehaunts "agreed to a scheme to falsely register copyright in
the Derivative Logo, unlawfully, for the further unlawful purpose of infringement on
Thomas Family Farm's copyright and Trademarks for commercial gain."  (*Id.* ¶ 151.)
The Copyright Act preempts this claim.  As to the first element, the parties do not dispute
that "the work at issue"—the Revised Wondell Graphic— "falls within the scope of
copyright subject matter."  *Montz*, 649 F.3d at 979.  As to the second element, and unlike
the tortious interference claim, the asserted right is Thomas Family's intellectual property
rights in the Revised Wondell Graphic.  That is the same right at stake in Thomas
Family's copyright infringement counterclaims against Seattlehaunts and third-party
claims against Mr. Wondell.  (*See* Ans. ¶¶ 86-98).  Accordingly, the Copyright Act
preempts Thomas Family's civil conspiracy claim.[5]

//

//

_____

[5] Mr. Wondell also moves to dismiss Thomas Family's civil conspiracy claim on
preemption grounds.  (*See* Wondell Mot. at 10-11.)  For the reasons stated herein, the court also
grants Mr. Wondell's motion to dismiss Thomas Family's civil conspiracy claim.

2. <u>Failure to State a Claim</u>

Seattlehaunts moves to dismiss Thomas Family's counterclaims for fraud, negligent misrepresentation, and breach of fiduciary duty for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  (*See* Seattlehaunts Mot. at 12-16.)  Thomas Family's counterclaims for fraud and negligent misrepresentation sound in fraud and are therefore subject to the heightened pleading standards of Rule 9(b).  *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) (noting that Rule 9(b)'s particularity requirement applies to all state law causes of action that "sound in fraud").  Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b). Thus, to avoid dismissal under Rule 9(b), a claim sounding in fraud must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation.  *Sanford v. MemberWorks, Inc*., 625 F.3d 550, 558 (9th Cir. 2010) (citing *Edwards v. Marin Park, Inc*., 356 F.3d 1058, 1066 (9th Cir. 2004)). "In alleging fraud . . . , a party must state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b); *see also Haberman v. Wash. Pub. Power Supply Sys*., 744 P.2d 1032, 1069 (Wash. 1987), *amended*, 750 P.2d 254 (Wash. 1988) ("The complaining party must plead both the elements and circumstances of fraudulent conduct."); *Depot, Inc. v. Caring for Montanans, Inc*., 915 F.3d 643, 668 (9th Cir. 2019); *Cooper v. Pickett*, //

137 F.3d 616, 627 (9th Cir. 1997); *Macris v. Bank of Am., N.A.*, No. CV F 11-1986 LJO SKO, 2012 WL 273120, at *11 (E.D. Cal. Jan. 30, 2012).

Rule 9(b)'s standard is relaxed in fraudulent omission cases. *Carideo v. Dell, Inc.*, 706 F. Supp. 2d 1122, 1132 (W.D. Wash. 2010) (citing *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1098-99 (N.D. Cal. 2007)); *see also Zwicker v. Gen. Motors Corp.*, No. C07-0291-JCC, 2007 WL 5309204, at *4 (W.D. Wash. July 26, 2007). In such cases, a plaintiff "will not be able to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim." *Falk*, 496 F. Supp. 2d at 1098-99. "Nonetheless, a plaintiff pleading fraudulent omission or concealment must still plead the claim with particularity." *Asghari v. Volkswagon Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1325 (C.D. Cal. 2013); *Waldrup v. Countrywide Financial Corp.*, No. 2:13-cv-08833-CAS(CWx), 2014 WL 3715131, *5 (C.D. Cal. July 23, 2014) (holding that where a fraudulent omission is at issue, the requirements of Rule 9(b) are relaxed, but not eliminated).

### a. Fraud

A claim for fraud under Washington law requires a nine-part showing "by clear, cogent, and convincing evidence: (1) a representation of existing fact, (2) its materiality, (3) its falsity, (4) the speaker's knowledge of its falsity, (5) the speaker's intent that it be acted upon by the person to whom it is made, (6) ignorance of its falsity on the part of the person to whom the representation is addressed, (7) the latter's reliance on the truth of the representation, (8) the right to rely upon it, and (9) consequent damage." *See Elcon Const., Inc. v. E. Wash. Univ.*, 273 P.3d 965, 970 (Wash. 2012). Seattlehaunts challenges

only the adequacy of Thomas Family's allegations related to the reliance element.  (*See* Seattlehaunts Mot. at 8.)

Thomas Family's fraud claim against Seattlehaunts is based on agreements between the parties in which Seattlehaunts allegedly "agreed with Thomas Family Farm, in writing, that the two entities would temporarily share the copyright and trademark to 'Nightmare on 9,' even though "Seattlehaunts then knew or believed that neither party owned the copyright and/or trademark to 'Nightmare on 9.'"  (Countercl. ¶¶ 105, 107.) Thomas Family further alleges that Seattlehaunts "made these false statements or misleading omissions with the intent to induce Thomas Family Farm to enter into contracts with Seattlehaunts under which, among other things, Seattlehaunts collected 75% of gross sales tickets."  (*Id.* ¶ 108.)

Seattlehaunts argues that Thomas Family "plead[ed] itself out of its claim[] for fraud" in two ways.  (*See* Seattlehaunts Mot. at 14-15.)  First, Seattlehaunts argues that Thomas Family "never alleged that it approached or hired Seattlehaunts for its skills in determining the ownership of any intellectual property rights."  (*Id.* at 15.)  Second, Seattlehaunts argues that "the counterclaims go on to allege that [Thomas Family] itself obtained rights in the trademark in 2018 before issues arose between the parties, a situation that undercuts any assertion by [Thomas Family] that it relied upon statements by Seattlehaunts when it abstained from obtaining IP rights related to the Nightmare on 9 event."  (*Id.* (italics omitted).)

In response, Thomas Family points to the "same document" in which "Seattlehaunts expressly refers to the [Revised Wondell Graphic] as 'Thomas Family

1    Farm's trademarked 'Nightmare on 9,'" a statement Thomas Family argues was

2    "calculated to assure [Thomas Family] that Seattlehaunts understood [Thomas Family] to

3    have the rights."  (Resp. to Seattlehaunts Mot. at 13.)  In reply, Seattlehaunts argues that

4    the contract provision to which Thomas Family points "is not a statement that

5    Seattlehaunts made but rather a provision that was incorporated into the agreement

6    reached as the result of arms' length negotiations."  (Seattlehaunts Reply (Dkt. # 25) at

7    9.)

8         The court does not find persuasive Seattlehaunts' argument that a claimant can

9    properly allege the reliance element of a fraud claim regarding intellectual property rights

10   if the speaker of the allegedly false statement is "a specialist in intellectual property law."

11   (*See* Seattlehaunts Mot. at 14-15.)  Seattlehaunts cites to no authority for this proposition.

12   Moreover, Seattlehaunts' argument about the timing of when Thomas Family sought to

13   obtain intellectual property rights in "Nightmare on 9" invites to court to weigh into a

14   factual dispute, which is improper on a Rule 12(b)(6) motion.  *See Wyler Summit P'ship*,

15   135 F.3d at 661.

16        However, Seattlehaunts' argument that Thomas Family could not have relied on a

17   provision in the parties' contract as a false statement by Seattlehaunts because it is a

18   "mutual statement" is more persuasive.  In contrast to a fraudulent inducement claim, in

19   which a party alleges that a false statement induced that party to enter a contract they

20   otherwise would not have entered, *see, e.g.*, *Elcon Const., Inc.*, 173 P.3d at 970, here,

21   Thomas Family alleges that the parties' agreed contract provision *itself* is a false

22   statement made by Seattlehaunts to Thomas Family.  (*See* Countercl. ¶ 105; Resp. to

1  Seattlehaunts Mot. at 12-13.)  The alleged contract provision is not a statement made by

2  Seattlehaunts and addressed to Thomas Family, but rather a mutually agreed term in a

3  contract between the parties.  (*See* Countercl. ¶ 105.)  Indeed, Thomas family's

4  counterclaim specifically alleges that Seattlehaunts "repeatedly agreed with Thomas

5  Family Farm, in writing," that the parties would temporarily share the intellectual

6  property rights to "Nightmare on 9."  (*Id.*)  In Thomas Family's telling, this contract

7  implies that one or both of the parties owned the copyright and trademark.  (*Id.*)

8  However, if there was any such implication, it was mutual, because according to Thomas

9  Family's allegations, both parties agreed to this language.  (*Id.*)

10       Accordingly, Thomas Family fails to state a claim for fraud against Seattlehaunts

11  because it fails to allege a false statement made by Seattlehaunts upon which Thomas

12  Family relied.  *See Elcon Const.*, 273 P.3d at 970.  Therefore, the court GRANTS

13  Seattlehaunts' motion to dismiss with respect to Thomas Family's fraud claim with leave

14  to amend.  Thomas Family's amended complaint must, at a minimum, include allegations

15  of a false statement or statements made specifically by Seattlehaunts.

16           b.  *Negligent Misrepresentation*

17       Seattlehaunts moves to dismiss Thomas Family's negligent misrepresentation

18  counterclaim on the grounds that the parties did not have a fiduciary or other special

19  relationship that triggers a duty to disclose, and that Seattlehaunts could not have

20  reasonably relied on any misrepresentations or omissions because Thomas Family

21  separately alleges that it obtained trademark rights in 2018 before issues arose between

22  the parties.  (*See* Seattlehaunts Mot. at 14-16.)  To state a counterclaim for negligent

1    misrepresentation, Thomas Family must allege the following elements:  (1) Seattlehaunts

2    supplied information for the guidance of others in their business transaction that was

3    false; (2) Seattlehaunts knew or should have known that the information was supplied to

4    guide the plaintiff in his or her business transaction; (3) Seattlehaunts was negligent in

5    obtaining or communicating the false information; (4) Thomas Family relied on the false

6    information supplied by the Seattlehaunts; (5) Thomas Family's reliance on the false

7    information supplied by the Seattlehaunts was justified (that is, the reliance was

8    reasonable under the surrounding circumstances); and (6) the false information was the

9    proximate cause of the Thomas Family's damages.  *ESCA Corp. v. KMPG Peat Marwick*,

10   959 P.2d 651, 654 (Wash. 1988).  "The duty to disclose in a business transaction arises if

11   imposed by a fiduciary relationship or other similar relationship of trust or confidence or

12   if necessary to prevent a partial or ambiguous statement of facts from being misleading."

13   *Van Dinter v. Orr*, 138 P.3d 608, 610 (Wash. 2006).

14         A portion of Thomas Family's negligent misrepresentation claim relies on the

15   same contract provision upon which Thomas Family relies to support its fraud claim.

16   (*See* Countercl. ¶¶ 114-16.)   This provision, standing alone, fails to allege a negligent

17   misrepresentation claim for a similar reason that it fails to support a fraud claim:  the

18   alleged contract provision is not information "supplied" by Seattlehaunts, but rather a

19   mutually agreed contract term.

20         However, Thomas Family's negligent misrepresentation claim also alleges that "as

21   a partner of Thomas Family Farm in 2012, Seattlehaunts had a duty to inform" Thomas

22   Family "that the intellectual property rights to 'Nightmare on 9' had not been acquired

1    from [Mr.] Wondell" but failed to do so, and conducted itself "as if the rights had been

2    acquired." (*Id.* ¶ 117.)  In doing so, Thomas Family alleges that Seattlehaunts "made

3    these false statements or misleading omissions with the intent to induce Thomas Family

4    Farm to enter into contracts with Seattlehaunts under which, among other things,

5    Seattlehaunts collected 75% of gross sales of tickets." (*Id.* ¶ 118.)

6         Seattlehaunts argues that Thomas Family fails to state a negligent

7    misrepresentation claim because Thomas Family separately alleges that after 2012, the

8    first year the parties worked together on the Nightmare on 9 event, Thomas Family "hired

9    Seattlehaunts annually as an independent contractor to present, setup, and run the Event

10   at the Thomas Family Farm." (Seattlehaunts Mot. at 15 (citing Countercl. ¶ 19).)  Thus,

11   according to Seattlehaunts, Thomas Family's allegations mean that any alleged

12   partnership or other special relationship "had dissolved by the end of the 2012 Halloween

13   season," and certainly before any alleged misrepresentations or omissions occurred. (*Id.*)

14   In response, Thomas Family urges the court to "not make that assumption," especially

15   because if partners "continue the business without any settlement or liquidation of the

16   partnership, they are presumed to have agreed that the partnership will continue." (*See*

17   Resp. to Seattlehaunts Mot. at 15 (quoting RCW 25.05.175(2)).)

18        Here, Thomas Family appears to make two contradictory factual allegations:

19   First, that Thomas Family and Seattlehaunts were engaged in a partnership from 2013

20   onward, and second, that Thomas Family hired Seattlehaunts annually as an independent

21   contractor from 2013 onward.  Although parties may generally plead in the alternative,

22   courts "are not required to accept as true conclusory allegations which are contradicted

1   by documents referred to in the complaint." *Steckman v. Hart Brewing, Inc.*, 143 F.3d

2   1293, 1295-96 (9th Cir. 1998).  Moreover, Thomas Family's counterclaim does not allege

3   facts that, taken as true, lead to a reasonable inference of a special relationship that would

4   trigger a duty to disclose once Seattlehaunts' relationship with Thomas Family became

5   that of an independent contractor.  Even in an omissions case, a claimant must still "plead

6   the claim with particularity." *Asghari*, 42 F. Supp. 3d at 1325.  Thomas Family's

7   allegations with respect to its negligent misrepresentation claim fail to do so.

8          Accordingly, the court GRANTS Seattlehaunts' motion to dismiss with respect to

9   Thomas Family's negligent misrepresentation counterclaim with leave to amend.  In an

10  amended counterclaim, Thomas Family must state with particularity alleged facts from

11  which the court may plausibly infer that the parties shared a special relationship that

12  triggers a disclosure duty at the time of the alleged omissions.

13              *c.  Breach of Fiduciary Duty*

14         Thomas Family alleges that Seattlehaunts and Thomas Family formed a

15  partnership "in putting on the Event in 2012, including but not limited to the development

16  of the" Revised Wondell Graphic.  (Countercl. ¶ 124.)  Thomas Family further alleges

17  that Seattlehaunts violated its duties to account to the partnership and to refrain from

18  self-dealing with the partnership "by acquiring from [Mr.] Wondell intellectual property

19  rights which properly belonged to the partnership or the opportunity to acquire which was

20  the partnership's." (*Id.* ¶ 126.)  Thomas Family also alleges that Seattlehaunts violated

21  its duty to refrain from competing with the partnership "by competing with Thomas

22  //

Family Farm for Nightmare on 9 customers before dissolution of the partnership." (*Id.* ¶ 127.)

Thomas Family's breach of fiduciary duty counterclaim suffers from the same defect as its negligent misrepresentation counterclaim. That is, Thomas Family alleges that Seattlehaunts's relationship with Thomas Family was that of a partner (*id.* ¶ 124), but also that of an independent contractor (*id.* ¶ 19). Thomas Family urges the court "not to make that assumption" that the partnership no longer existed as of 2013. (*See* Resp. to Seattlehaunts Mot. at 15.) However, the "assumption" comes from Thomas Family's own pleadings. (*See* Countercl. ¶ 19 (alleging that Thomas Family "hired Seattlehaunts annually as an independent contractor to present, setup, and run the Event at the Thomas Family Farm").) Based on these allegations, Thomas Family has failed to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677-78; *see also Sprewell*, 266 F.3d at 988 ("[Courts] are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint.") (quoting *Steckman*, 143 F.3d at 1295-96.

3. Motion to Strike Affirmative Defenses

Seattlehaunts moves to strike Thomas Family's affirmative defenses under Federal Rule of Civil Procedure 12(f). (Seattlehaunts Mot. at 16.) Seattlehaunts contends that Thomas Family's affirmative defenses are all insufficient because they are "conclusory" and are merely "a list of various legal concepts devoid of any factual allegations." (Seattlehaunts Mot. at 17 (citing Ans. ¶¶ 80-90).) The court concludes that Thomas

Family's fifth, and eighth through eleventh, affirmative defenses are insufficient, but the remainder are not.  The court addresses each grouping of affirmative defenses in turn.

       *a.  Insufficiently Pleaded:  Affirmative Defenses Five and Eight Through Eleven*

These affirmative defenses are, respectively, "unclean hands," "laches, waiver, and/or estoppel," "statute of limitations," "setoff and/or recoupment," and "all matters asserted herein as counterclaims are raised as defenses."  (Ans. ¶¶ 84, 87-90.)  Even considering the factual allegations in Thomas Family's answer and counterclaim, these defenses are not "articulated to such a degree that the plaintiff is not subject to unfair surprise."  *J & J Sports Prods., Inc. v. Delgado*, No. 1:12-CV-001945-LJO, 2013 WL 3288564, at *5 (E.D. Cal. June 28, 2013).  For example, Thomas Family's statute of limitations defense does not provide Seattlehaunts with any hint as to which statute(s) of limitations might apply and to which of the variety of federal and state law claims that Seattlehaunts asserts against Thomas Family in this lawsuit—claims which are no doubt governed by different limitations periods.  *See, e.g.*, *Rosen v. Masterpiece Mktg. Grp., LLC*, 222 F. Supp. 3d 793, 804 (C.D. Cal. 2016) (striking a statute of limitations defense on similar grounds).  In an amended answer, Thomas family must allege, at a minimum, which statute(s) of limitations it is relying upon, what cause(s) of action are barred, the date after which such bar became effective, and some factual allegations concerning why the limitations period has expired.  Similarly, Thomas family must allege, at a minimum, which causes of action its "unclean hands" and "laches, waiver, and/or estoppel" defense apply to, and some factual allegations concerning these defenses.

1

> b. *Sufficiently Pleaded:  First through Fourth, Sixth, and Seventh Affirmative*
> *Defenses:*

2

These affirmative defenses are, respectively, "invalid copyright, "fraud on

3

copyright office," "innocent infringement," "common source," and "lack of originality."

4

(Ans. ¶¶ 80-83, 85, 86.)  These affirmative defenses relate to Seattlehaunts' copyright

5

claims and are supported by factual allegations in the answer and counterclaim that are

6

sufficient to provide Seattlehaunts fair notice.   *See, e.g.*, *Tyco Fire Prod. LP v. Victaulic*

7

*Co.*, 777 F. Supp. 2d 893, 903 (E.D. Pa. 2011).  ("In some cases, merely pleading the

8

name of an affirmative defense is sufficient.")  *J & J Sports Prods., Inc. v. Delgado*, No.

9

1:12-CV-001945-LJO, 2013 WL 3288564, at *5 (E.D. Cal. June 28, 2013).  For example,

10

with respect to the invalidity defense, there is no question based on the parties' pleadings

11

that the copyright registration at issue is Seattlehaunts' registration of the Revised

12

Wondell Graphic.  (*See generally* Ans.)  By pleading invalidity as an affirmative defense,

13

Thomas Family places Seattlehaunts on notice that it anticipates defending Seattlehaunts'

14

copyright infringement claims on invalidity grounds.  Similarly, Thomas Family's "lack

15

of originality" defense is supported by specific factual allegations that the Revised

16

Wondell Graphic that Seattlehaunts registered was based directly on the Original

17

Wondell Graphic, and before that, the Hook Graphic.  These defenses and the

18

corresponding factual allegations provide enough information that Seattlehaunts is not

19

subject to unfair surprise.  Therefore, the court DENIES Seattlehaunts' motion to strike

20

with respect to these affirmative defenses.

21

*//*

22

1    **C.      Mr. Wondell's Motion**

2           In addition to moving to dismiss Thomas Family's civil conspiracy claim on

3    preemption grounds, Mr. Wondell also moves to dismiss Thomas Family's claims against

4    him for copyright infringement and contributory infringement on the ground that Thomas

5    Family has not received registration of the copyright pursuant to 17 U.S.C. § 411(a).

6           Section 411(a) provides that "no civil action for infringement of the copyright in

7    any United States work shall be instituted until . . . registration of the copyright claim has

8    been made in accordance with this title." 17 U.S.C. § 411(a).  There was previously a

9    circuit split as to whether registration "has been made" in accordance with § 411(a) as

10   soon as the claimant delivers the required application, copies of the work, and fee to the

11   Copyright Office (the "application approach"); or only after the Copyright Office reviews

12   and registers the copyright (the "registration approach").  *Fourth Estate Public Benefit*

13   *Corp. v. Wall-Street.com, LLC, et al.*, ---U.S.---, 139 S. Ct. 881, 886 (2019).  However,

14   the Supreme Court resolved the circuit split in favor of the registration approach.  *See id.*

15   at 892.

16          Here, Mr. Wondell contends that Thomas Family has not alleged that it possesses

17   a copyright registration for the Hook Graphic, which is the basis for Thomas Family's

18   infringement claims against Mr. Wondell.  (*See* Wondell Mot. at 9 (citing Countercl.

19   ¶¶ 87-88 (alleging that "copyright protection exists" for the Hook Graphic, and that the

20   Revised Wondell Graphic "was based on, copied, and is substantially similar to" the

21   Hook Graphic).)  In response, Thomas Family argues that Section 411(a) "do[es] not

22   require a counterclaimant to register [a] copyright before seeking relief as to the same

1  copyright which was already put at issue in the action by the Plaintiff registrant." (Resp.

2  to Wondell Mot. at 8.) Thomas Family contends that Section 411(a) requires registration

3  before a "civil action" for copyright infringement is "instituted," and that here, the action

4  was already instituted when Seattlehaunts filed its lawsuit. (*Id.* at 9-10.) Thomas Family

5  concedes that it has not applied for or received a copyright registration for the Hook

6  Graphic. Therefore, the question before the court is whether counterclaimants or third-

7  party claimants must meet Section 411(a)'s registration requirement before bringing an

8  infringement counterclaim. The court concludes that it does.

9      In *Fourth Estate*, the Supreme Court described Section 411(a)'s registration

10  requirement "as akin to an administrative exhaustion requirement that the owner must

11  satisfy before suing to enforce ownership rights." 139 S. Ct. at 887. The Ninth Circuit

12  Court of Appeals has further described it as "an element of an infringement claim."

13  *Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 988 (9th Cir. 2017). Thomas

14  Family points to a single case in which a court declined to dismiss an infringement claim

15  for failure to strictly comply with Section 411(a)'s registration requirement. (*See* Resp.

16  to Wondell Mot. at 10-11 (citing *Strobel v. Rusch*, 431 F. Supp. 3d 1315, 1328 (D.N.M.

17  2020).) In that case, the defendants obtained copyright registration and subsequently

18  filed amended counterclaims. (*Id.*) The *Strobel* court noted that the plaintiffs failed to

19  cite any authority to support the argument that the defendants' "late registration" and

20  "subsequent filing" of amended counterclaims failed to cure defendants' prior failure to

21  comply with the registration requirement. (*Id.*) *Strobel*, however, runs contrary to

22  Thomas Family's argument. That case was about whether to excuse the requirement.

1  Nothing in *Strobel* suggests that the requirement simply does not exist for

2  counterclaimants.

3        In fact, in *Strobel*, as well as in related cases, courts excuse the requirement only

4  in circumstances in which registration had been made at the time the infringement claim

5  is challenged. *See, e.g.*, *Schmidt v. Baldy*, No. CV169368DSFAGRX, 2019 WL

6  8219486, at *1 (C.D. Cal. June 11, 2019); *VHT, Inc. v. Zillow Grp., Inc.*, No.

7  C15-1096JLR, 2020 WL 2307492, at *10 (W.D. Wash. May 8, 2020) (excusing strict

8  compliance with the registration requirement where compliance was challenged after a

9  trial on the merits, a final judgment, an appeal, and a remand, and where the challenged

10  party obtained registration prior to the challenge).  Here, in contrast, Thomas Family does

11  not even allege that it has *applied* for copyright registration for the allegedly infringed

12  work, let alone that it obtained such registration.  Under these circumstances, the court

13  cannot excuse compliance.

14        Because Thomas Family has failed to allege that it meets the registration

15  requirement, the court GRANTS Mr. Wondell's motion to dismiss Thomas Family's

16  claims for infringement and contributory infringement.  This dismissal, however, is

17  without prejudice to Thomas Family refiling its infringement claims, if appropriate, once

18  it has obtained registration.

19               **IV.   CONCLUSION**

20        For the foregoing reasons, the court GRANTS in part and DENIES in part

21  Seattlehaunts' motion (Dkt. # 22).  Specifically, the court (1) DISMISSES with prejudice

22  Thomas Family's counterclaim against Seattlehaunts for civil conspiracy; (2)

1  DISMISSES Thomas Family's counterclaims against Seattlehaunts for fraud, negligent

2  misrepresentation, and breach of fiduciary duty, but with leave to amend to correct the

3  deficiencies identified in this order; and (2) STRIKES Thomas Family's fifth, eighth,

4  ninth, tenth, and eleventh affirmative defenses (Ans. ¶¶ 84, 87-90), but with leave to

5  amend to correct the deficiencies identified in this order.

6      Further, the court GRANTS Mr. Wondell's motion (Dkt. # 23) and (1)

7  DISMISSES with prejudice Thomas Family's third-party claim against Mr. Wondell for

8  civil conspiracy; and (2) DISMISSES without prejudice Thomas Family's third-party

9  claims against Mr. Wondell for copyright infringement and contributory infringement.

10     Thomas Family shall file an amended answer and counterclaim that corrects the

11 deficiencies identified herein withing fourteen (14) days of the date of this order.

12     Dated this 11th day of September, 2020.

13

14

15     JAMES L. ROBART
       United States District Judge

16

17

18

19

20

21

22

ORDER - 27